UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CASSANDRA MARIE JAKUBIK,

                              Plaintiff,      **No. 1:15-cv-00481-MAT**
                                              **DECISION AND ORDER**

          -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

_____

## I. Introduction

Represented by counsel, Cassandra Marie Jakubik ("Plaintiff")
instituted this action pursuant to Title II of the Social Security
Act ("the Act"), seeking review of the final decision of the Acting
Commissioner of Social Security ("the Commissioner")[1] denying her
application for Disability Insurance Benefits ("DIB"). The Court
has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g),
1383(c).

## II. Procedural Status

On June 7, 2012, Plaintiff protectively filed a Title II
application, alleging disability beginning October 1, 2011, due to
hypertension, chronic obstructive pulmonary disease ("COPD"),
postpartum depression, posttraumatic stress disorder ("PTSD"),
arthritis, kidney stones, knee injury, and back problems. Following
denial of her claim at the initial level, administrative law judge

---

[1]

Nancy A. Berryhill became the Acting Commissioner of Social Security on
January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting
Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need
be taken to continue this suit by reason of the last sentence of section 205(g)
of the Social Security Act, 42 U.S.C. § 405(g).

Timothy M. McGuan ("the ALJ") conducted a hearing on November 6, 2013, in Buffalo, New York. Plaintiff appeared with her attorney and testified, and impartial vocational expert Josiah L. Pearson ("the VE") testified remotely by phone. On January 27, 2014, the ALJ issued an unfavorable decision (T.7-28). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts the summaries of the administrative transcript set forth by the parties in their respective memoranda of law, and will discuss the record evidence as necessary to the resolution of the pending motions.

For the reasons set forth herein, the Commissioner's decision is affirmed.

### III. The ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff meets the insured status requirements of the Act through June 30, 2016, and had not engaged in substantial gainful activity since October 1, 2011. (T.12).

At step two, the ALJ found that Plaintiff has the "severe" impairments of obesity, degenerative disc disease with diffuse facet joint osteoarthritis, major depressive disorder, and panic disorder without agoraphobia. (T.12-14).

The ALJ evaluated Plaintiff's impairments in connection with the Listings, and found that none of her impairments, singly or in combination, meet or medically equal a listed impairment. The ALJ gave particular consideration to Listings 1.04 (Disorders of the Spine), 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders). (T.14). The ALJ performed the special psychiatric review technique and found that Plaintiff has mild restrictions in activities of daily living, moderate limitations in social functioning and maintaining concentration, persistence, or pace, and has not experienced any episodes of decompensation of extended duration. (T.14-15).

Prior to proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to sit for up to 8 hours in an 8-hour workday; stand and/or walk for up to 6 hours in an 8-hour workday, with the option to sit or stand after 45 minutes; can lift up to 20 pounds occasionally and 10 pounds frequently; can occasionally interact with the public; and can occasionally understand, remember, and carry out complex or detailed tasks.

At step four, the ALJ determined that Plaintiff had past relevant work as a cafeteria attendant, a telephone survey worker, and a cashier-checker. In light of her RFC, the ALJ found, Plaintiff cannot perform her past relevant work.

At step five, the ALJ noted that Plaintiff was 37 years-old on the onset date, with a limited education and the ability to communicate English. The ALJ relied on the VE's testimony to find

that, in light of Plaintiff's age, education, vocational background, and RFC, there are jobs that exist in significant numbers the national economy and the Western New York region (i.e., Erie and Niagara counties) that she can perform, including mail clerk (DOT 206.687-026, unskilled (SVP 2), light exertional work); and housekeeping cleaner (DOT 373.687-014, unskilled (SVP 2), light exertional work). Accordingly, the ALJ entered a finding of not disabled.

## IV. Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## V.  Discussion

### A.  Errors at Steps Two and Three of the Sequential Evaluation (Plaintiff's Point I)

Plaintiff argues the ALJ should have found that she has an intellectual disability that qualifies as a "severe" impairment at step two. (See Plaintiff's Brief ("Pl.'s Br.") at 13). Relatedly, Plaintiff argues that the ALJ erred at step three by failing to analyze whether she meets Listing 12.05 (Mental Retardation) due to her alleged intellectual disability.

#### 1.  Severity Determination at Step Two

At the step two of the evaluation, the ALJ considers the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. at §§ 404.1520(c), 404.1521. Thus, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521 (eff. until Mar. 27, 2017). "Basic work activities . . . mean the abilities and aptitudes necessary to do most jobs[.]" Id. As relevant to mental impairments, "[b]asic work activities" include "(3) [u]nderstanding, carrying out, and remembering simple

-5-

instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b) (eff. until Mar. 27, 2017).

In support of her step two argument, Plaintiff points to the report of consultative psychologist Renée Baskin, Ph.D., who estimated her intellectual functioning as being in the "below average to borderline range." (T.459). Plaintiff also relies on the Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination," completed by her primary care physician, Paul C. Dippert, D.O., at the behest of the New York State Office of Temporary and Disability Assistance on March 13, 2013. (T.600-01). On that form, Dr. Dippert listed "mild MR" as one of Plaintiff's "[m]edical [c]ondition[s]." (T.601). However, Dr. Dippert cited no information when asked for "[p]rognosis and [t]reatment [r]ecommendations including prescribed medications" regarding the "mild MR," and simply wrote "fair." (Id.). In addition, when asked for the "[d]ate of original diagnosis/diagnosis type" of "mild MR," he wrote "3/13/13," the same day that he completed the report. (Id.).

As an initial matter, the Regulations define "[i]mpairments" as "anatomical, physiological, or psychological abnormalities" that are "*demonstrable by medically acceptable clinical and laboratory techniques*." 42 U.S.C. § 423(d)(3) (emphasis supplied). Here, as the ALJ noted, none of the treatment providers or the examining sources conducted any standardized intelligence testing or noted

-6-

any clinical findings to support the conclusion that Plaintiff has "mild MR." The only evidence of an intellectual disability are the passing references in the record by Dr. Dippert and Dr. Baskin to Plaintiff's below average intelligence or borderline intellectual functioning. Courts have found that such remarks do not, in and of themselves, conclusively demonstrate a "severe" impairment, particularly where the evidence of record does not suggest a "severe" cognitive impairment. See, e.g., Crawford v. Astrue, No. 13-CV-6068P, 2014 WL 4829544, at *24 (W.D.N.Y. Sept. 29, 2014) ("The record reflects that Crawford successfully completed high school, in a special education setting, and was able to study for and obtain her CNA certification. Further, Crawford maintained employment in several semi-skilled positions, including as a CNA, for several years. Crawford reported that she is able to manage her own finances and enjoys reading as one of her hobbies. Although Crawford testified at the hearing that she does not believe that she is able to read at an appropriate level, she conceded that she is able to read a newspaper. Thus, the record does not suggest that Crawford suffers from significant cognitive impairments, and the few references in the record were insufficient to trigger the ALJ's duty to order an intelligence examination.") (citing, inter alia, Sneed v. Barnhart, 88 F. App'x 297, 301 (10th Cir. 2004) (unpublished opn.) (stating that "[t]he isolated comments about [claimant's] possible limited intelligence, when viewed as part of the entire record, do not sufficiently raise a question about his intelligence); Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir.

1989) (finding that "a few instances in the record noting diminished intelligence do not require that the ALJ order an I.Q. test in order to discharge his duty to fully and fairly develop the record")).

As the ALJ noted at various points in his decision, the record lacked evidence showing that Plaintiff has limitations in cognitive functioning that "significantly limit[ed]" her "mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521. (See T.19, 22, 24, 25). For example, although Plaintiff stated variously that she completed high school and that she only had an 11th grade education, Plaintiff consistently reported that she took regular classes in school and was not placed in special education classes. (T.155, 457, 519). She informed Dr. Baskin that she "graduated from high school" where she was in "regular education" classes, and subsequently "completed vocational training as a CNA [certified nurse's aide]." (T.457). She reported that she wanted to return to school to obtain a nursing degree. (T.519). Plaintiff also successfully performed semi-skilled work as a cafeteria attendant and cashier-checker (see T.72-73, 156), which likewise was inconsistent with a finding that she has an intellectual disability. See Lawler v. Astrue, 512 F. App'x 108, 111 (2d Cir. 2013) (unpublished opn.) (holding that claimant's past performance of semi-skilled work supported ALJ's finding that claimant did not suffer from an intellectual disability); See Talavera, 697 F.3d at 153 (concluding that substantial evidence supported Commissioner's finding that claimant had "not met her burden of establishing that

she suffers from qualifying deficits in adaptive functioning" where claimant "meaningfully participate[d] in the care of her two young children, that she completed ten years of education in regular classes and attended a year of business training, and—up until the onset of her back problems—she experienced no difficulties whatsoever accomplishing the tasks required during the course of her previous periods of employment").

Moreover, Plaintiff's medical records, her own statements, and the remainder of Dr. Baskin's report provide support for the ALJ's finding that her alleged intellectual disability does not "significantly limit" her ability to do basic work activities. For example, in December 2011, Plaintiff saw Dr. Timothy Rassmuson, M.D. to establish care, at which time he "educated [Plaintiff] on the importance of diet, exercise, and medication compliance with [her] understanding noted." (T.479). Plaintiff presented to Dr. Rassmuson as an "alert, oriented, pleasant" patient. (Id.). In February 2012, Plaintiff went to Mercy Hospital of Buffalo complaining of kidney stones, and during her mental status examination, she had normal responses to verbal stimuli and normal speech. (T.238, 262). Plaintiff was able to understand multiple verbal instructions from her care providers regarding such topics as modified diets, swallowing guidelines/compensatory techniques, reporting pain using the pain management scale, and weight transfer techniques. (T.243-44).

Consultative psychologist Dr. Baskin reported that Plaintiff was responsive to questions, cooperative, had adequate expressive

and receptive language skills, had adequate social skills, an adequate manner of relating, and an adequate overall presentation (T.458-59). Plaintiff's attention was only mildly impaired, and that was due to her nervousness and emotional distress, not to her cognitive functioning. Dr. Baskin noted that Plaintiff was able to count and do simple calculations although she was unable to do serial 3s successfully. (T.459). Plaintiff also informed Dr. Baskin that she can manage her own money and has a driver's license. (Id.). Finally, despite estimating Plaintiff's intellectual functioning as being in the "below average to borderline" range, Dr. Baskin opined that Plaintiff had "minimal to no limitations being able to follow and understand simple directions and instructions, [and] perform simple tasks independently." (T.460). Dr. Baskin assigned "moderate limitations being able to maintain attention and concentration, maintain a regular schedule, learn new tasks with supervision, perform complex tasks independently, make appropriate decisions, relate adequately with others and deal appropriately with stress." (T.460). The ALJ gave "some weight" to that assessment, noting that "most assessed limits are due to [Plaintiff]'s presentation and her subjective complaints." This reasoning is supported by substantial evidence. With regard to Plaintiff's presentation, Dr. Baskin noted that she "cried throughout much of the evaluation" (T.459). However, none of the treatment notes from her regular mental health and primary care providers indicate that level of emotional lability. Furthermore, when she appeared for her consultative physical examination the

same day as the appointment with Dr. Baskin, Dr. Samuel Balderman noted that Plaintiff was "in no acute distress," and he did not indicate that she was tearful or crying. (T.454). With regard to her subjective complaints, Plaintiff admitted to Dr. Baskin that she is "capable of doing activities of daily living but does not do [them] because she is 'too depress (sic).'" (T.459). Instead, Plaintiff gets help from her parents with activities such as caring for her child. "Primarily[,]" Dr. Baskin wrote, "she is at home doing nothing." (Id.). Notably, although Dr. Baskin indicated that the results of the consultative examination "appear[ed] to be consistent with psychiatric problems," Dr. Baskin said merely that they "*may* interfere to *some degree*" with Plaintiff's "ability to function on a daily basis." (T.460; emphases supplied). Therefore, on the whole, Dr. Baskin's opinion supports the ALJ's finding that Plaintiff's alleged intellectual disability is not a "severe" impairment.

### 2. Step Three Equivalency Finding

Plaintiff also argues that the ALJ erred because he did not evaluate whether she met or equaled Listing 12.05 (Mental Retardation). (See Pl.'s Br. at 14-15).

"For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). According to Listing 12.05's introductory paragraph, "[i]ntellectual disability refers to significantly subaverage

general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05. "If [an] impairment satisfies the diagnostic description in the introductory paragraph [of § 12.05] *and* any one of the four sets of criteria [in Paragraphs A through D, the ALJ] will find that [the] impairment meets the Listing." 20 C.F.R. Pt. 404, Subpt. P., App'x. 1, § 12.00 (emphasis supplied).

Thus, before the ALJ reaches the criteria in Paragraphs A through D, the claimant must meet the criteria in § 12.05's introductory paragraph, i.e., she must have (1) cognitive limitations and deficits in adaptive functioning, (2) initially manifesting themselves before age 22. See, e.g., Talavera v. Astrue, 697 F.3d 145, 153 (2d. Cir. 2012); Burnette v. Colvin, 564 F. App'x 605, 607 (2d Cir. 2014) (unpublished opn.). The criteria in the introductory paragraph must be shown separately from the rest of the Listing's criteria relating to IQ scores. See 20 C.F.R. § 404.1525(c)(3) (providing that a claimant's impairment must satisfy "all of the criteria of [a given] listing, including any relevant criteria in the introduction"). Adaptive functioning refers to a claimant's "ability to cope with the challenges of ordinary everyday life." Talavera, 697 F.3d at 153 (quoting Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007); (internal alterations omitted). Courts have held that a claimant who "is able to satisfactorily navigate activities such as living on [her] own, taking care of children without help sufficiently well that they

-12-

have not been adjudged neglected, paying bills, and avoiding eviction . . . does not suffer from deficits in adaptive functioning." Id. (internal quotation marks and alterations omitted). Here, there is no evidence in the record that Plaintiff had or has the types of deficits in adaptive functioning contemplated by Listing 12.05. Therefore, Plaintiff's alleged intellectual disability does not satisfy the introductory diagnostic description. In light of that finding, there is no need for the Court to proceed to analyze whether she meets the criteria of Paragraphs A, B, C, or D of Listing 12.05. See, e.g., Lawler, 512 F. App'x at 111 (no need to examine ALJ's analysis of the Listing 12.05C factors after determining the ALJ had properly found no "limitations in adaptive functioning").

**B. RFC Unsupported by Substantial Evidence due to ALJ's Erroneous Weighing of Medical Opinions and Failure to Adequately Account for Stress-Related Limitations (Plaintiff's Point II)**

Plaintiff argues that the ALJ failed to properly weigh, and explain the weight given to, the opinions of "every examining source of record, and one of the two review psychologists[,]" who "opined that [Plaintiff] had limitations related to her inability to handle stress." (Pl's Br. at 16). Plaintiff further contends that the ALJ's rejection of the opinions of consultative psychologist Dr. Baskin; treating primary care physician Dr. Dippert; treating therapist Christina Benz, M.S. ("Therapist Benz"); and Nurse Practitioner Gerald Turk ("N.P. Turk") are not supported by substantial evidence. The Commissioner counters that,

in assessing Plaintiff's RFC, the ALJ properly weighed the medical opinion evidence and sufficiently explained the weight he assigned to the various opinions, and that the RFC is supported by substantial evidence in the record.

### 1. Treating Physician Dr. Dippert

A treating physician's opinion on the issues of the nature and severity of a claimant's impairments is accorded controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). When an ALJ declines to accord a treating physician's opinion controlling weight, he must consider several factors, including the length, nature and extent of the treatment relationship; the frequency of examination; the supportability of the opinion; the consistency of the opinion; and whether the treating source is a specialist. See 20 C.F.R. § 404.1527(c)(1)-(6); § 416.927(c)(1)-(6). These factors are also to be considered with regard to non-treating acceptable medical sources, such as consultative physicians and psychiatrists. See 20 C.F.R. § 404.1527(a)(1), (c), (e); 20 C.F.R. § 404.1513(a)(1), (2) (eff. until Mar. 26, 2017). Ultimately, however, it is the ALJ's responsibility to formulate an RFC assessment based on the record as a whole. See 20 C.F.R. § 404.1527(c)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual

functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

In March 2013, Dr. Dippert noted that Plaintiff "present[ed] for discussion of Social Security disability . . . . Mostly what she is interested in is seeing whether [he] will support her in a social security disability claim. This [he] will do as she is not capable of working for various reasons but the primary one is that she is cognitively challenged." (T.655). Dr. Dippert then stated that although Plaintiff has anxiety and depression, she has been better on medication. (T.656). Dr. Dippert opined that Plaintiff could not handle job stress or deal with many people at one time. (Id.). On examination, Dr. Dippert noted that Plaintiff had a normal affect and an improved mood on medication. (T.657). In another form, Dr. Dippert listed Plaintiff's medical condition as "mild MR [mental retardation]" and opined that she was very limited in all areas of mental functioning. (T.600-01). As the basis of his opinion, Dr. Dippert indicated that Plaintiff "[r]eports generalized anxiety that effects [sic] her ability to focus, perform tasks and to work well with others." (Tr. 601).

The ALJ assigned Dr. Dippert's March 2013 opinion (T.600-01) "little weight" because it was inconsistent with the evidence as a whole and Dr. Dippert's own notes. On March 12, 2013, the day before he issued the opinion, Dr. Dippert stated, "I don't see she could be an effective worker . . . *without some training in the right position.*" (T.656; emphasis supplied). This statement is at odds with his opinion that she is completely incapable of

functioning in a work environment. Cf. Poupore v. Astrue, 566 F.3d 303, 305-06 (2d Cir. 2009) (ALJ's determination that claimant was not disabled was supported by substantial evidence, including report of claimant's treating physician stating that claimant would be an excellent candidate for vocational rehabilitation).

The ALJ also found that Dr. Dippert's opinion appeared to be heavily based on Plaintiff's subjective complaints, which the ALJ elsewhere determined to be less than fully credible. (See T.24). In providing his rationale, the ALJ cited proper regulatory factors (e.g., the consistency and supportability of the opinion), and he did not misstate or selectively cite the evidence. In particular, as discussed in the previous section of this Decision, the alleged deficits in Plaintiff's cognitive functioning, which Dr. Dippert stated were the basis for his opinion, are not supported by substantial evidence in the record. The ALJ correctly noted that Dr. Dippert's clinical examination of Plaintiff on the date he issued the opinion, and his observation that she had improved on medication, were inconsistent with his extreme limitations on her ability to handle stress. This stress-related restriction was also inconsistent with other substantial evidence in the record. In February of 2013, for instance, just one month prior to Dr. Dippert's report, Plaintiff reported that her son underwent emergency surgery but "she feels she handled it fairly well." (T.631). Later in February, Plaintiff reported "things were better" within her family, and that she was staying at her sister's house with her son and "expresse[d] taking a lot of enjoyment out of

[it]." (T.629). By spending more time with her sister, Plaintiff was removing herself from her current stressful living situation, and she reported that helped to decrease her anxiety levels. (T.627). Although she had been experiencing sadness about the untimely death of her brother, she had "been more social[,] spending more time with friends and family members." (T.625). In April 2013, Plaintiff "report[ed] that things are going well, [despite] continued ongoing stressors at home." (T.620). In May 2013, Plaintiff was "doing pretty well" despite experiencing several recent stressors, including a custody dispute. (T.618).

While Dr. Dippert also filled out a form in November 2012, stating that Plaintiff was restricted from doing all mental and physical work activity and working in all working environments, Dr. Dippert did not provide a medical basis for his opinion or offer any specific limitations. (T.547). Furthermore, at or around the same time, Dr. Dippert completed a form for Erie County Department of Social Services stating "[Plaintiff] states cannot work because of psychiatric condition (death of brother)[.]" (T.548). The next day, however, Plaintiff's mother called and canceled Plaintiff's appointment because Plaintiff was attending a job fair. (T.552).

Although it is improper to reject a treating source's opinion solely because it is informed by the claimant's subjective complaints, here, Dr. Dippert explicitly stated that the basis of his opinion was Plaintiff's "[r]eports" about her symptoms. (T.601). Elsewhere in his decision, the ALJ found that her

subjective complaints were not entirely credible. See Gates v. Astrue, 338 F. App'x 46, 49 (2d Cir. 2009) (unpublished opn.) (ALJ properly discounted doctor's opinion when findings were based on the "unreliable foundation" of claimant's unsupported allegations).[2]

### 2. Consultative Psychologist Dr. Baskin

For the reasons discussed above in Section V.A.1, the Court finds that the ALJ did not commit legal error in weighing Dr. Baskin's opinion, and that his analysis was supported by substantial evidence.

### 3. Therapist Benz and N.P. Turk

On October 25, 2013, Therapist Benz and N.P. Turk offered opinions regarding the limitations caused by Plaintiff's mental impairments. Plaintiff argues that the ALJ erred in giving these opinions only "some weight." (T.25).

Nurse practitioners and therapists are defined as "other sources" under the Regulations; they do not constitute "acceptable medical sources" entitled to the presumption of deference under the treating physician rule. E.g., Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (unpublished opn.); SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). Thus, as a general rule, opinions from "other sources" are not entitled to controlling weight. See Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983) ("Inasmuch as Nurse Laro did treat Mongeur on a regular basis, her opinion is

---

[2]

Plaintiff has not challenged the ALJ's credibility analysis on appeal.

entitled to some extra consideration, but the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician."). Nevertheless, SSR 06-3p recognizes that "other source" opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-3p, 2006 WL 2329939, at *3. SSR 06-03p further directs ALJs to use the same factors used in evaluating the opinions of "acceptable medical sources" when evaluating the opinions of "medical sources who are not 'acceptable medical sources,'" such as therapists and nurse practitioners. Id. at *4.

Therapist Benz opined that Plaintiff had "extreme" limitations in responding to usual work situations and to changes in a routine work setting. (T.681). As her basis for this opinion, Therapist Benz relied on Plaintiff's reactions "in [counseling] session" to "becom[ing] overwhelmed or experienc[ing] significant stress." (T.681). However, the limitations described by Therapist Benz ("irritability, confusion and difficulty concentrating/interacting") are not "extreme" reactions to "significant" stress and, moreover, Therapist Benz stated merely that Plaintiff "can exhibit" them, not that she always exhibits them. (T.681). Furthermore, Therapist Benz only assigned "moderate" limitations with regard to Plaintiff's abilities to interact appropriately with the public, supervisors, and co-workers, and responded "no" as to whether there were "any other capabilities affected by the impairment." (Id.). Therapist Benz noted that her

opinions were based on Plaintiff's own subjective statements about her "difficulty making decisions without guidance from others." (T.680). Again, as was the case with Dr. Dippert's opinion, Therapist Benz's opinion relied heavily on Plaintiff's subjective complaints, which the ALJ found were less than fully credible. And, as noted above, Plaintiff has not challenged the ALJ's credibility analysis on appeal.

N.P. Turk completed a check-the-box form in which he was asked to rate Plaintiff's symptoms and functional limitations as "intermittent" or "continuous," and further rate whether they are "mild," "moderate," or "severe." N.P. Turk indicated two work functions in which Plaintiff has "severe" restrictions—communicating clearly and effectively and initiating social contacts. (T.686). The ALJ noted that despite N.P. Turk's opinion that Plaintiff had severe limitations initiating social contact (T.686), Plaintiff reported she was increasing her time spent socializing with friends and family. (T.25, 625). Notably, N.P. Turk assessed only "mild" limitations in getting along with strangers, cooperating with others, and exhibiting social maturity; and only "moderate" limitations in getting along with friends and family, responding to authority and supervision, responding without fear toward strangers, and interacting and actively participating in group activities.

N.P. Turk further opined that Plaintiff experienced a deterioration in functioning and was unable to adapt to changing work demands in response to being exposed to stressful situations,

and has repeatedly had episodes of decompensation "when feeling overwhelmed or increase in stress." (T.687). However, as the ALJ correctly noted, there is no evidence in the record that Plaintiff has had any "episodes of decompensation." To the contrary, as discussed above, the record indicates that Plaintiff has exhibited fairly good coping skills when faced with increases in stress, such as the occasion on which her son underwent emergency surgery.

Here, the ALJ did not entirely disregard N.P. Turk's and Therapist Benz's opinions. Rather, as noted above, he assigned them "some weight" but declined to adopt the extremely restrictive portions of the opinions on the basis that they were inconsistent with the treatment notes and Plaintiff's activities and statements about her symptoms. Overall, the opinions of N.P. Turk and Therapist Benz are not fundamentally inconsistent with the ALJ's RFC assessment, which limited Plaintiff to unskilled work that requires only occasional interactions with the public. SSR 85-15 states that unskilled jobs at all exertion levels "ordinarily involve dealing primarily with objects, rather than with data or people," such that "they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." SSR 85-15, 1985 WL 56857 at *4; see also, e.g., Brown v. Colvin, No. 14-cv-1784, 2016 WL 2944151 at *5 (D. Conn. May 20, 2016) ("A limitation to occasional interaction with others does not significantly limit the range of unskilled work . . . .").

## VI. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision was not legally erroneous and is supported by substantial evidence. It therefore is affirmed. Accordingly, Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:     December 5, 2017
           Rochester, New York.